IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| MANZURUL KHAN, | § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. G-13-436 |
| COLLEGE OF THE MAINLAND | § § § | |
| Defendant. | § § | |

## OPINION AND ORDER

Pending before the Court, with the consent of the parties, is Defendant College of the Mainland's Motion for Summary Judgment. (Docket Entry (Dkt.) No. 27). Plaintiff Manzurul Khan filed a response to the Motion (Dkt. No. 30), to which Defendant then filed a reply. (Dkt. No. 31). After carefully considering the Motion, the response and reply, and the applicable law, the Court now issues this Opinion and Order granting Defendant's Motion for Summary Judgment and dismissing this action for the reasons discussed herein.

## I. BACKGROUND

This is a employment discrimination action. Plaintiff Manzurul Khan (Khan) claims his former employer, College of the Mainland (COM), discriminated against him based on race and national origin when his teaching contract was not renewed upon its expiration. (Dkt. No. 1).

The relevant facts in this case are not particularly complicated. Khan is an Asian male who is from Bangladesh. (Dkt. No. 1 at 2, ¶3). In 2003, COM hired Khan as a part-time, adjunct

1

instructor to principally teach introductory computer courses at the school.[1] (Dkt. No. 27, Ex. B (Khan deposition) at 15-16, 18-19).[2] Approximately five years later, Khan applied for and was awarded a full-time teaching position with COM.[3] Khan was also placed on the "tenure track," which meant that he was eligible to apply for tenure after teaching for three years.[4] (*Id.*, Ex. A-4 (exhibits to Dampeer affidavit); Ex. B at 35). Khan taught successive, one-year terms for the 2009-2010, 2010-2011, and 2011-2012 school years. (*Id.*, Ex. A-3; Ex. B at 21).[5]

In or around 2010, COM conducted an internal audit to determine its compliance with SACS[6] standards. (*See* Dkt. No. 27, Ex. A (Dampeer affidavit) at ¶7; Ex. C (Glover deposition) at 9-10, 42). The audit revealed that several instructors at COM, including Khan, were teaching certain categories of courses for which they lacked the requisite credentials.[7] (*Id.*). Following the audit, COM decided that instructors who lacked the proper credentials to teach certain categories

---

[1] Bruce Glover ("Glover"), who was the chair of the Department of Business and Computer Technology and a tenured instructor, hired Khan. He is a Caucasian male. (*See* Dkt. No. 27, Ex. B at 15-16; Dkt. No. 30, Attach No. 11).

[2] Khan also began teaching business-related courses at some point. (Dkt. No. 27, Ex. B at 25-26).

[3] Glover also served on the committee that promoted Khan. (Dkt. No. 27, Ex. B at 21-22).

[4] There is no dispute that an award of tenure is not guaranteed to any instructor. (Dkt. No. 27, Ex. A at ¶6; Ex. A-4 (COM Board Policy DDB (LOCAL))).

[5] At the time the decision was made not to renew his contract, Khan was not a tenured instructor; and, despite being eligible, he had not yet applied. (Dkt. No. 27, Ex. B at 35).

[6] The Southern Association of Colleges and Schools (SACS) is an organization that governs the accreditation of degree-granting higher education institutions located throughout the Southern states. (Dkt. No. 30, Attach. No. 9 (Rahman deposition) at 27; Attach. No. 13).

[7] Notably, the issue was not whether the instructors were "qualified" to continue to teach these courses, but whether they were properly credentialed to do so based on SACS accreditation standards.

of courses would no longer be allowed to teach those courses after the Fall 2010 semester.[8] (*Id.*).

Approximately one year later, the Texas Higher Education Coordinating Board (THECB)[9] notified COM in August 2011, that the request for temporary exemption of two of its "low-producing degree programs" at the school – namely, the "Computer Information Systems" program and the "Network Systems Technologies," – was denied. In the August 2011 letter, the THECB further explained:

> There has been little improvement in the number of graduates from each program in recent years. The action plans are commendable, but the responses did not adequately address cost efficiency. In addition, the programs have an excessive number of small classes leading to cost inefficiency. The mandatory phase-out-date for these programs has been listed on the attached Information Sheet. New students must not be admitted to the program after the Fall 2011 semester.

(Dkt. No. 27, Ex. A-2). In the letter, the THECB also set the mandatory phase-out date for the programs/degrees as August 31, 2015. (*Id.*).

Following THECB's mandate that these two degree programs be eliminated, administrators at COM informed Glover, who served as the Department Chair, that it would eliminate a full-time position from the department.[10] (Dkt. No. 27, Ex. C at 19). Glover made the recommendation[11]

---

[8] Khan lacked the requisite credentials for teaching the business-related courses so he was no longer allowed to teach these courses. (Dkt. No. 27, Ex. B at 29; Ex. C at 9-10, 18-19, 21-22, 39-40). Similarly, Glover, who had credentials to teach business-related courses, was not allowed to continue to teach computer-related courses.

[9] COM is a public community college located in Galveston County, Texas and, while governed by a seven-member Board of Trustees, is subject to oversight by the THECB. The oversight provided by the THECB is separate and apart from that provided by the SACS which is the governing organization for purposes of accreditation. (Dkt. No. 27, Ex. A at ¶¶ 3-4).

[10] In 2012, the full-time, tenured instructors in the Department were Bruce Glover, Colleena Jackson, Freda O'Connor, Selina Rahman, and Melvin Williams. (Dkt. No. 27, Ex. A at ¶13). The full-time, non-tenured instructors were Faith Alexander, John Barber, Manzurul Khan, and Sheila Wall;

3

to COM's administrators that Khan's contract not be renewed when it expired. (*Id.*, Ex. C at 18-19, 35). Glover explained the basis of his recommendation as follows:

> [there was] a pool of three people who were non-tenured in the department[:] Manzur Khan, Faith Alexander and John Barber. Both of those two, Faith Alexander and John Barber, had master's degrees in computer science and in business. They could teach twice the number of courses that Manzur taught. Manzur only could teach the computer-related courses.

(*Id.*, Ex. C at 33). Accordingly, in Glover's view, eliminating Khan offered COM the potential for more flexibility in assigning different courses to instructors.[12] (*Id.*, Ex. C at 21-22, 35, 37-38). Thereafter, in a letter dated April 30, 2012, administrators at COM notified Khan that his existing contract would expire, by its own terms, on August 31, 2012, and that it would not be renewed. (*Id.*, Ex. B at 38-39; Ex. B-1; Dkt. No. 30, Attach. No. 3).

Khan pursued his administrative remedies[13] and, once exhausted, he filed suit in federal court. (Dkt. No. 1 at 2, ¶5). Bringing his action pursuant to 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e, Khan alleges that COM discriminated against him based on his race and national origin when his teaching contract was not renewed. (*Id.*). In addition to requesting declaratory

---

however, Wall's contract was not renewed following the 2011-2012 school year, which – as explained by Glover – left a pool of only three full-time, non-tenured instructors to consider. During the Spring 2012 semester, the Department was staffed with the following part-time/adjunct instructors who taught a variety fo courses: Richard Barton, Kevin Bryant, John Buffa, Janis Cutaia, Angela Dampeer, Robert De Los Reyes, Peter Doak, Linda Early, Andrew Gregory, Bart Hamiter, Arnetta Henderson, Cynthia Mickens, Floyd Newsom, Ann Stephens and Christopher Walding. (*Id.*).

[11] Glover acknowledged that his recommendation was made without the benefit of any standards or parameters provided by COM administrators. (Dkt. No. 27, Ex. C at 18-19, 35).

[12] Khan has a master's degree in computer science and in electrical engineering, however, Glover explained that COM does not offer courses in electrical engineering so this was not relevant to his determination. (Dkt. No. 27, Ex. C at 38-39).

[13] Khan submitted a Charge of Discrimination to the EEOC. (Dkt. No. 27, Ex. G).

relief, Khan seeks back wages and benefits, compensatory damages, reasonable attorney fees and an award of costs. (*Id.* at 7, ¶29-30).

Upon the completion of discovery, COM filed this Motion for Summary Judgment. (Dkt. No. 27). In its Motion, COM argues that Khan's §1981 claims fail as a matter of law because: (1) his national origin-based employment discrimination it not a cognizable claim; and (2) his race-based employment discrimination, while cognizable, fails because Khan's claim against a governmental entity must be brought under §1983 and, even if his pleadings were broadly construed, Khan has neither pled nor proven municipal liability. Turning to the Title VII claims, COM argues that Khan has failed to establish a *prima facie* case of discrimination based on his race or national origin and, even assuming he had, COM has articulated a legitimate, non-discriminatory reason for its employment decision and Khan has not submitted evidence which creates a genuine issue of material fact that it was merely pretextual. Following the respective response and reply (Dkt. Nos. 30, 31), the Motion is now ripe for adjudication.

## II. STANDARD OF REVIEW

The Court analyzes COM's Motion for Summary Judgment under the well-established summary judgment standard. Fed. R. Civ. P. 56(c); *see generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

### A. §1981 Discrimination Claims

Khan brings claims of discrimination against COM under §1981. It is well-established that

Khan's claim of discrimination based on national origin is not cognizable under §1981 and must, therefore, be dismissed. *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981); *Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 526 F.Supp.2d 746, 754 (S.D.Tex. 2007).

Khan's claim for race-based discrimination is cognizable under §1981. Nevertheless, the law is clear that he must bring this claim against COM under §1983[14] because §1981 "does not itself provide for an independent cause of action." *Davis v. Dallas Indep. School Dist.*, 448 Fed.Appx. 485, 490 (5th Cir. 2011); *see also, Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 463 (5th Cir.2001) (recognizing that §1981 did not provide a separate cause of action against local governmental entities and the 1991 amendments did not create an implied right of action under §1981 against a governmental entity); *Harris v. City of Balch Springs*, 9 F.Supp.3d 690, 702 (N.D.Tex. 2014) (recognizing that "[t]he Civil Rights Act of 1991 amended section 1981 by adding subsection (c); however, this amendment did not overrule or abrogate the Court's holding in . . . *Oden*.). Although Khan has referred to §1983 in his complaint, he has not pled, much less proven, governmental liability under §1983 and, therefore, this claim must be dismissed as well.[15]

## B. Title VII Discrimination Claims

---

[14] Even assuming this were not the case, a plaintiff's claim would still be subjected to a *Monell* analysis which would require him to prove a custom or policy of discrimination. *See generally, City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-123 (1988) (discussing requirements to impose governmental entity liable).

[15] Even assuming he had, Khan's racial discrimination under § 1983 is "essentially the same" as such a claim brought under Title VII. Thus, the Court's analysis with respect to Khan's discrimination claim under Title VII would apply with equal force to this cause of action. *Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007); *see also, Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir.1980) (when § 1983 is used as a parallel remedy for transgressions of § 1981 and Title VII rights, the elements of the causes of action are the same.)

6

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2. A plaintiff may prove employment discrimination through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Direct evidence is evidence that, if believed, proves intentional discrimination without inference or presumption. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). It "includes any statement or written document showing a discriminatory motive on its face." *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001). If the plaintiff provides direct evidence, then the burden shifts to the employer to prove that the same adverse action would have occurred regardless of discriminatory animus. *Laxton*, 333 F.3d at 578.

Absent direct evidence of intentional discrimination, a plaintiff's claims are governed by the burden shifting scheme established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-02 (1973). Under the *McDonnell Douglas* test, if a plaintiff establishes a prima facie case of discrimination, a presumption of discrimination arises and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* at 802; *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The defendant's burden is satisfied if it produces evidence, which "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Price*, 283 F.3d at 720 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original). "If the defendant articulates a reason that can support a finding that its actions were nondiscriminatory, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out." *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993)). "The plaintiff must

7

then introduce sufficient evidence to create a genuine issue of material fact" that the defendant was motivated by discriminatory animus. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Plaintiff meets this burden by showing either (1) that defendant's articulated reason was pretextual (pretext alternative), or (2) that plaintiff's protected characteristic was a motivating factor in the decision (mixed motives alternative). *Id.* If plaintiff meets this burden by demonstrating discriminatory animus, "it falls to the defendant to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus." *Id.* at 312-13.

In the present case, Khan presents no direct evidence of discrimination based on his race or national origin. *Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (to serve as direct evidence of employer discriminatory intent, the decision(s) must be direct and unambiguous, allowing a jury to conclude without inference or presumption, that national origin was an impermissible factor in the decision(s)). Accordingly, Khan's discrimination claims are governed by the burden shifting scheme established in *McDonnell Douglas*.

### 1. Establishing a *Prima Facie* Case

To establish a *prima facie* case of employment discrimination based on race or national origin, a plaintiff must normally show: (1) he is a member of a protected group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) after he was discharged, he was replaced with a similarly qualified member of the non-protected group *or* non-protected employees were given preferential treatment under "nearly identical" circumstances. *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003); *Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *see also, Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005) (recognizing that the fourth prong may also be met if a plaintiff

8

shows that he was "treated differently from others similarly situated").

In this case, there is no dispute that Khan satisfies the first three elements required to establish a *prima facie* case. In particular, Khan is a member of a protected class (*i.e.*, his race is Asian and his national origin is Bangladeshi), he was qualified for the position, and he was subjected to an adverse employment action when he was discharged upon the expiration of his employment contract. Instead, the dispute centers on the fourth element – namely, whether Khan was replaced by a member of a non-protected group or whether Khan was treated less favorably than non-protected employees. Insofar as both grounds have been urged, the Court will address each in turn.

### a. Khan Was Not Replaced

COM argues that Khan cannot satisfy the fourth element of a *prima facie* case because he not replaced. (Dkt. No. 27 at 10). Khan responds that he has demonstrated a *prima facie* case of unlawful discrimination because COM replaced him with individuals outside of his protected group. Even after considering the evidence in a light most favorable to him as the non-moving party, Khan's contentions finds no support in the evidence. In particular, Khan initially claims that, after he was discharged, he was replaced by Faith Alexander (Alexander), a Caucasian female, and/or John Barber (Barber), a Caucasian male. However, the evidence clearly reflects that both these individuals were already employed by COM as non-tenured full-time instructors at the time Khan's contract was non-renewed (Dkt. No. 27, Ex. A at 10; Ex. E at 9-10; Ex. F at 14); and that neither replaced him as an instructor of the networking courses that were still offered at COM.[16] (*Id.*, Ex. E at 13; Ex. F at 21). Although Khan also attempts to argue that COM

---

[16] The THECB mandated the elimination of the Network Systems Technology program/degree by August 31, 2015. (Dkt. No. 27, Ex. A-2). At the time of his deposition, Glover testified that networking

9

replaced him on the "tenure track" with Alexander, there is no dispute that this did not occur until nearly two years later when Alexander, acting on her own accord, applied for a full-time, tenure track instructor position at COM. (Dkt. No. 27, Ex. E at 4:11-12). Thus, this is simply too remote in time to support Khan's contentions. *Cf. Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (recognizing that *prima facie* case of discrimination cannot be based on actions taken too remote in time to the adverse employment action).

Finally, Khan claims that COM replaced him as an instructor of the networking courses by adjunct instructors. Problematically, for Khan, by his own admission, there were at least two other adjunct instructors that were *already* employed by COM and teaching networking course at the time his contract was non-renewed. (Dkt. No. 30, Attach. No. 1 at 33). Morever, even if these adjunct instructors took over teaching networking courses previously taught by Khan, it would not mean he was replaced for purposes of Title VII. *See Martin v. Bayland, Inc.*, 403 F.Supp.2d 578, 583 (S.D.Tex. 2005), *aff'd*, 181 Fed.Appx. 422 (5th Cir. 2006) ("[w]hen a terminated employee's job duties are distributed among other employees after termination, those employees do not replace the terminated employee"); *Roper v. Exxon Corp.*, 27 F.Supp.2d 679, 682 (E.D.La. 1998) ("replacement" does not occur when there has been a transfer or re-allocation of work to existing employees upon another employee's termination).[17]

---

courses were still being offered at COM when Khan was discharged, but that he was not replaced. (*Id.*, Ex. C at 22).

[17] The Court pauses to note that, while not urged by the parties, to the extent that this action could be cast as reduction-in-force case, a modified *McDonnell Douglas* test is applied to establish a *prima face* case of intentional discrimination in a reduction-in-force." *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991) (recognizing modified test); *see also, Ortiz v. Shaw Group, Inc.*, 250 Fed.Appx. 603, 606 (5th Cir. 2007) (setting forth elements required to establish a *prima face* case of intentional discrimination in a reduction-in-force). However, even under this modified test, Khan appears to lack evidentiary support to establish a *prima* facie case. Although Khan might be heard to argue that

10

### b. Khan Was Not Subjected To Disparate Treatment

Khan also attempts to satisfy this fourth element based on a claim of disparate treatment. In order to establish this element, Khan must show that non-protected employees were given preferential treatment under "nearly identical" circumstances. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009). COM maintains that Khan cannot establish a *prima facie* claim because he cannot show that non-protected individuals were given preferential treatment. (Dkt. No. 27 at 10-12; Dkt. No. 31 at 3-4).

Khan initially claims that he was treat less favorably than Faith Alexander ("Alexander") and/or John Barber ("Barber"). The evidence does not support his contentions. While there is no dispute that Alexander and Barber shared the same department chair (Glover) as Khan and each carried full teaching loads, albeit in different fields, they were not similarly situated. For instance, unlike Khan, neither Alexander and Barber were non-tenured track instructors and they were compensated at a different step on COM's salary schedule. (Dkt. No. 27, Ex. A at ¶¶ 6, 8-9). Additionally, unlike Khan, Alexander and Barber both had business and computer-related degrees which, from COM's perspective, offered the school the potential for more flexibility in teaching assignments. *See Escobar v. Univ. of North Texas*, 562 F.Supp.2d 804, 810-11 (E.D.Tex. 2007) (concluding that the professors identified by plaintiff were not in "nearly identical" circumstances because they were in different classes, had superior teaching evaluations, and were more highly

---

he was qualified to teach business courses, there is no dispute that he lacks the requisite credentials to do so under SACS standards. Morever, even if requested – which in this case it was not – an employer typically has no duty to transfer an employee to another position when it reduces its work force for economic reasons. *See, e.g., Pages–Cahue v. Iberia Lineas Aereas de Espana*, 82 F.3d 533, 538-39 (1st Cir.1996); *Jameson v. Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir.1996) *Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir.1995); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1422-23 (9th Cir.1990); *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir.1986).

published than plaintiff).

Khan next points to Glover, the previous department chair who initially hired him and was on the committee that promoted him to a full-time teaching position, and claims that Glover was treated more favorably because he advanced in the department by teaching classes outside of his credentials. (Dkt. No. 27, Ex. C at 40-42; Ex. G; Dkt. No. 30, Attach. No. 2 (Khan Affidavit)). As discussed previously, COM's audit disclosed the Glover was teaching courses outside of his credentials, however, the evidence does not show that he was treated differently than Khan. On the contrary, COM determined that neither Glover nor Khan were allowed to teach classes outside of the scope of their credentials. (Dkt. No. 27, Ex. C at 9-10). Khan also contends that Glover was treated more favorably because Glover, who only possessed the credentials to teach one field of courses (*i.e.*, business-related courses), was not discharged, as was Khan, for lacking the credentials to teach a broader range of courses at COM. The evidence does not, however, show the two were similarly situated. Instead, unlike Khan, Glover was a tenured instructor[18] and, at the time of the non-renewal of Khan's annual contract, he served as the Department Chair. *Dodge v. Hertz Corp.*, 124 Fed.Appx. 242, 244-45 (5th Cir. 2005); *Trotter v. BPB Am., Inc.*, 106 Fed.Appx. 272, 276-77 (5th Cir. Aug. 4, 2004); *St. Romain v. Ft. Bend Cnty. Sheriff's Office*, No. H-09-2273, 2011 WL 306411, *3 (S.D. Tex. Jan. 27, 2011) (Atlas, J.).[19]

The Court, therefore, concludes that because Khan has failed to establish a *prima facie* case of discrimination, COM would be entitled to summary judgment on Khan's national origin or race-

---

[18] The evidence reflects that Glover as granted tenure by COM on or around October 23, 2006.

[19] Khan also refers in passing to other instructors (*i.e.*, Williams, O'Connor and Jackson) and he suggests that they were treated more favorably. The Court sees no need to separately discuss each of these individuals because it is abundantly clear that they are not similarly situated to Khan because, in addition to teaching courses in areas outside of the programs the State mandated be eliminated, they were tenured instructors). (Dkt. No. 27, Ex. C at 34).

12

based discrimination claims.

### 2. Legitimate, Non-Discriminatory Reason

Even assuming that Khan could establish that a *prima facie* case of discrimination existed based on his race and/or national origin, it would carry him no farther. COM offered an adequate ground, other than race and/or national origin, for the non-renewal of his contract. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-08 (1993) (a defendant may meet this burden by presenting evidence that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action); *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (a defendant's burden is satisfied if it produces evidence, which "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action"); *see also, Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993) (a defendant "need only articulate a lawful reason, regardless of what its persuasiveness may or may not be"). In particular, COM stated that THECB denied its request for temporary exemptions and ordered it to eliminate two of its low-enrollment and low-performing degree programs (*i.e.*, "Computer Information Systems" and "Network Systems Technology"), which then necessitated the elimination of a full-time, non-tenured teaching position. *Cf. Walther v. Lone Star Gas Co.*, 852 F.2d 119, 123 (5th Cir. 1992) (recognizing that a reduction in force was a valid, non-discriminatory reason for an employee's discharge). COM explained that its decision over which position to eliminate was made based on which instructor – as credentialed – offered the school the greatest flexibility to teach the broadest range of classes. COM ultimately selected Khan's position for elimination because he was credentialed to teach only computer-related courses,[20]

---

[20] Khan also has a master's degree in electrical engineering courses, but it is largely irrelevant because this is not taught at COM. (Dkt. No. 27, Ex. C at 38-39).

whereas the other two non-tenured, full-time instructors (*i.e.*, Alexander and Barber) held the requisite degrees (*i.e.*, business and computers) that qualified them to teach, if and as needed, both business and computer classes.[21] Because COM has articulated a legitimate, non-discriminatory reason to eliminate Khan's position, to the extent shown, the presumption raised by Khan's *prima facie* case disappears. *See St. Mary's*, 509 U.S. at 511 (recognizing that the inference of racial animus has been negated when a legitimate, non-discriminatory reason is offered for the employment decision).

### 3. Pretext For Discrimination

Considering that COM has articulated a legitimate, non-discriminatory reason for not renewing Khan's contract, it is incumbent on Khan to show that the reason given for his termination is pretextual[22] in order to avoid summary judgment. *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir.1996). He has not done so. *See St. May's Honor Ctr. v. Hicks*, 509 U.S. at 519 ("to rebut a defendant's showing of legitimate, nondiscriminatory reasons for its actions, '[i]t is not enough . . . to *dis*believe the employer' ... [instead] ... the factfinder must *believe* the plaintiff's explanation of intentional discrimination.").

It is apparent that this case emanates from Khan's subjective feeling that he had been discriminated against because of his race and/or national origin,[23] however, subjective beliefs are

---

[21] Notably, COM did not select Khan's position for elimination due to his performance, individually or as compared to other COM employees. (Dkt. No. 27, Ex. C at 33:5-16).

[22] A pretext is "a false or weak reason of motive advanced to hide the actual or strong reason" for an employment decision. BLACK'S LAW DICTIONARY, 1307 (9th Ed.2009).

[23] Khan testified that he believed the reason COM eliminated his position must have been because of his race and/or national origin because there is no other reason for his discharge at the expiration of his contract. (Dkt. No. 27, Ex. A at 47-49, 71-73).

14

not sufficient to establish pretext. *See Hervey v. Miss. Dept. of Educ.*, 404 Fed.Appx. 865, 870 (5th Cir. 2010) (subjective beliefs of discrimination are not sufficient to support a claim for relief); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir.1999) (a plaintiff's subjective belief that the true reason for his discharge was discriminatory, however genuine, cannot provide a basis for judicial relief); *McKey v. Oxidental Chemical Corp.*, 956 F.Supp. 1313, 1319 (S.D.Tex. 1997) (recognizing that personal belief or speculation is insufficient to create a fact issue as to pretext).

Nonetheless, Khan has endeavored to bolster his subjective beliefs with speculative inferences. In particular, Khan maintains that COM's reason is pretextual because it still offers networking courses and certificates which are taught by adjunct instructors. This is not, however, sufficient evidence of pretext. There is no dispute that COM was ordered to eliminate two computer-related degree programs, which prompted COM to make a business decision that it could not sustain a full-time professor to teach networking courses for purposes of obtaining certification. (Dkt. No. 27-11 at 4 (Interrogatory No. 3). It is not the court's place "to second-guess the business decisions of an employer, so long as those decisions are not the result of discrimination." *Jackson v. Watkins*, 619 F.3d 463, 468 (5th Cir. 2010); *see also, Elliot v. Group Medical & Surgical Services*, 714 F.2d 556, 567 (5th Cir.1993) (recognizing courts should not second guess managerial decisions made in apparent good faith); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992) (explaining that the law is "not intended to be a vehicle for judicial second guessing of business decisions, nor was it intended to transform the courts into personnel managers"). Although Khan maintains that COM's decision was the result of

discrimination, the evidence he offers simply does not support his view.[24]

Khan also attempts to bolster his subjective beliefs by pointing out that COM retained Alexander and Barber who are "less-qualified in light of [their] lack of networking experience and not teaching in the area." (Dkt. No. 30 at 21). Additionally, Khan argues that the reason given by COM "suffers" because Alexander "has never taught a business course since the termination of Plaintiff" and that Alexander was not qualified, nor has she taught the networking classes. (Dkt. No. 30 at 25-26). This does not demonstrate pretext, nor could a reasonable trier of fact properly conclude that it existed. Instead, the undisputed evidence reflects that, unlike Khan, Alexander and Barber had two relevant degrees which offered more potential flexibility to COM in terms of teaching assignments. In terms of Alexander, the evidence also reflects that she had previously taught a business class and, even though she had not done so recently, she had the flexibility and the credentials to do so if and when necessary. In terms of Barber, the evidence reflects that Barber had taught and continues to teach both business and computer-related courses at COM. Although Khan is protected from employment decisions based on intentional discrimination, the law does not protect him from unfair decisions. *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997).

---

[24] Khan attempts to rely on the difficulties he claims that Selina Rahman, an Asian female from Bangladesh, experienced in obtaining tenure (Dkt. No. 30 at 9-15, 23), however, this evidence does not establish discrimination. Although Rahman stated in her deposition that she encountered difficulties when she applied for tenure, she did not attribute the difficulties to Glover – the individual who Khan alleges discriminated against him – and she did not testify in her deposition that her difficulties were the result of her national origin or race. On the contrary, Rahman explained that she never submitted a grievance alleging discrimination or a Charge of Discrimination with the EEOC and, whatever difficulties she encountered, they were resolved; she was awarded tenure; and she currently serves as the Department Chair.

In conclusion, setting aside his speculation and/or unsubstantiated assertions, Khan has not shown that COM's proffered reason was merely a pretext or that his race or national origin was a motivating factor behind its decision. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 148-49 (2000) (when determining whether summary judgment is appropriate, courts are instructed to consider "the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered"); *see also, Pace v. Southern Ry System*, 701 F.2d 1383, 1391 (11th Cir. 1983) ("[t]he possibility of a jury drawing a contrary inference sufficient to create a dispute as to a material fact does not reify to the point even of a thin vapor capable of being seen or realized by a reasonable jury"). The Court, therefore, concludes his claims fail.

## CONCLUSION

For all of the foregoing reasons, it is the **ORDER** of this Court that the "Motion for Summary Judgment" (Dkt. No. 27) of the College of the Mainland is **GRANTED** and all claims asserted by Plaintiff, Manzurul Khan, against the College of the Mainland are **DISMISSED with prejudice**.

**DONE** at Galveston, Texas, this _27th_ day of July, 2015.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE